UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-80894-CIV-MARRA

STEPHANIE A. KOCH,

      Plaintiff,

v.

ATKINSON, DINER, STONE, MANKUTA &
PLOUCHA, P.A., a Florida corporation,

      Defendant.

_____/

## PLAINTIFF STEPHANIE A. KOCH'S MOTION TO ENFORCE TERMS OF SETTLEMENT AGREEMENT

COMES NOW, Plaintiff, STEPHANIE A. KOCH, by and through her undersigned counsel and pursuant Southern District Local Rule 7.1 (C) Plaintiff files this Her Motion to Enforce Terms of Settlement Agreement, and further states as follows:

## I.      INTRODUCTION.

On October 12, 2011, the parties to this action reached a full and final settlement of this matter. The terms of the settlement agreement were definite and certain and Defendants consented to such terms. Specifically, the parties agreed to the following settlement terms:

      a.      Defendants pay Plaintiff $9,000.00 and in turn Plaintiff will dismiss the instant lawsuit with prejudice, while specifically preserving Plaintiff's right to file a second lawsuit for a subsequent violation of the FDCPA, which allegedly took place after the instant lawsuit was filed.

[The Declaration of Scott D. Owens dated October 28, 2011 in support of the instant motion attached hereto as Exhibit A]. Defendants are now refusing to acknowledge the

existence of a settlement and are refusing to execute a written settlement agreement memorializing the Settlement Terms because they forgot to discuss the issue of confidentiality after agreeing to all of the essential Settlement Terms.  Specifically, Defendant's allege after they agreed to all essential terms and that they now wish to incorporate an "all claims" provision even though no such reference was made to same during to settlement negotiations.  Defendant's attempted repudiation does not negate their acceptance to all essential Settlement Terms of the settlement agreement, which should be enforced by the Court.

## II. FACTUAL BACKGROUND.

On August 9, 2011, Plaintiff filed a one count federal action for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692g [DE-1].   After this Court denied Defendant's Motion to Dismiss [DE-8], Plaintiff sought to amend her complaint and conferred with opposing counsel on the amendment.  The amendment sought to seek relief on behalf of all those who received similar letters from Defendant (i.e. class relief).  Before filing same, Mr. Stevens inquired if Plaintiff had any demand on her individual claim.

The parties, though their respective counsel, were engaged in verbal and written settlement discussions which would resolve the issues related to the instant federal lawsuit *only*. The undersigned counsel specifically communicated the following email to Mr. Stevens on October 6, 2011, and later October 7, 2011 when discussing the clear and distinct separation of causes for purposes of negotiating a settlement:

> [October 6, 2011:] "*There is a second FDCPA violation which arose after the instant lawsuit was filed – do you want me to incorporate that into my demand*?"

> [October 7, 2011:]  "*Let's see if can settle the first case…I am willing to settle the present FDCPA lawsuit for $9,000.  Please advise – the offer is open through the end of today and funds would need to be wired before 5pm next week Friday.*"

[Composite Exhibit B] (emphasis added).  Ms. Brigman, also counsel for Defendant, later acknowledging the settlement, included language related to "all claims" when in fact, counsel for Defendant was made aware in writing and in conversation that Plaintiff had another cause of action which arose after the filing of the instant law suit against Defendant for additional FDCPA violations which were going to be resolved at a later date, hence the language in the undersigned communications related to settling the "first case" or the "present FDCPA lawsuit."   The undersigned counsel clearly and in no uncertain terms had previously clarified that settlement discussions were limited to this cause of action, and no other.   In that context, Ms. Brigman wrote an email to the undersigned counsel on October 12, 2011 stating:

> "This will confirm our conversation and the settlement that has been reached for $9,000. Your client will sign a release for all claims against Atkinson Diner and will agree that this settlement will not be discussed with the media, or published in any way, including not being discussed online or through social media. We will prepare a release and forward it to you tomorrow."

[Exhibit C].  The undersigned counsel agreed only after having notified opposing counsel of the limitation of the settlement to this cause of action in writing, after having provided the Defendant the opportunity to negotiate both claims by distinguishing this is being negotiated separately (See Composite Exhibit B).  The undersigned counsel further wrote to Defense counsel on October 12, 2011:

> "I can represent the case is now settled and any funds will not be released from my trust account until client signs the release.  Given my impending move, getting her signature might take a few days as I am uncertain what degree of access I will have to the internet and fax over the next 48 hours. Once we agree to language (tomorrow), I would ask your client to wire the funds and I will dismiss matter within 24 hours with prejudice - the court will reserve jurisdiction to assure she signs the agreed upon release."

[Exhibit D].   On October 14, 2011, the proposed release was forwarded to the undersigned counsel by Defendants [Exhibit E].   In furtherance of the undersigned counsel's reminder of the limited settlement discussions, another email was sent to Ms. Brigman on October 15, 2011 by the undersigned counsel which suggested the unethical nature of attempting to use such efforts (for an attorney to release future liability):

"I cannot agree to following sentence:

damages of any kind past, present and future; general damages; special damages; statutory damages; and attorneys fees and/or costs.

My client has another FDCPA claim of which Mr. Stevens was informed.  My client is not releasing that claim.  Besides, I think it may raise ethical issue for an attorney to release future liability."

[Exhibit F].   Indeed, the settlement proposed by Ms. Brigman is unethical as it strips Plaintiff of her federal rights, releases Defendant from all future claims, and attempts to gives Defendant a permanent license to violate the law.   "Rule 4-5.6(b) prohibits Florida attorneys from proposing or agreeing to a restriction on an attorney's right to practice in connection with a settlement of a matter between private parties. The prohibition applies to both direct and indirect restrictions." Professional Ethics of the Florida Bar, Opinion 04-2 (January 21, 2005).  Plaintiff maintains that the settlement proposed by Ms. Brigman is void as a matter of law.

Ms. Brigman later responded via email on October 17, 2011 stating:

"Respectfully, its [sic] really not clear from your email string with Mr. Stevens. Your first email dealt with amending the lawsuit to file a class action on behalf of other affected parties, and your next email just referenced another FDCPA violation. Its [sic] understandable that Attorney Stevens wouldn't realize that you were talking about another violation related specifically to Ms. Koch, as opposed to another violation related to another resident. Regardless, in our discussions on Wednesday, I made it clear that my client would only pay the $9,000 in exchange for a general release of all of Ms. Koch's claims related to their debt collection activities. You agreed and even went so far as to discuss language with me

4

regarding the release of other types of claims such as FDUTPA. Since I wasn't a party to your email exchange with Mr. Stevens, you should have made it clear at that time that she had other pending actions she planned on proceeding with and did not intend to release. Our conversation was clearly documented in the below email exchange, where I stated that your client would sign a release for "all claims" against Atkinson Diner, and you responded "Agreed."  Again, we can agree to language in the release related to not precluding her ability to file a lawsuit for future claims (future being defined as date of the release forward)."

[Exhibit G].  Only on October 17, 2011 did Ms. Brigman take the self-serving position that the matter being negotiated included the subsequent claim.   Thereafter, the undersigned counsel immediately notified Ms. Brigman on October 17, 2011 of the assumptions she wrongfully adopted:

"See highlighted email exchange below.  This is the information I provided to Mr. Stevens.  It clearly makes reference to my client and not anyone else.  There is no reasonable basis to assume I was talking about some other client wherein I never previously mentioned another client.  The present release should only incorporate those claims which arose up to the date of filing – and nothing else."

Defendant's position that the undersigned counsel was making reference to some "phantom client" are unbelievable and fails as a matter of law.  *See generally, Fed'l Deposit Ins. Corp. v. Hemmerle*, 592 So.2d 1110 (Fla. 4th DCA 1991) (Holding that new consideration must support modification of settlement agreement); *see also, Sands v. Wagner & Hunt, P.A.*, Slip Copy, 2009 WL 2730469 (S.D. Fla. August 28, 2009); ***NBN Broadcasting v. Sheridan Broadcasting Networks*, 105 F.3d 72, 78-79 (2d Cir. 1997) ("A plaintiff has no obligation to expand its suit in order to add a claim that it could not have asserted at the time suit was commenced.")**; *Kaiser Aerospace & Elec. v. Teledyne Indus.*, 244 F.3d 1289 (11th Cir., 2001) citing *Manning v. City of Auburn*, 953 F.2d 1355, 1360 (11th Cir. 1992) (holding that res judicata does not apply where the facts giving rise to the second case only arise after the original pleading is filed in the earlier litigation).

## III. MEMORANDUM OF LAW.

**A.     The Court Has Authority to Enforce the Parties' Settlement Agreement.**

It is undisputed in the Eleventh Circuit that the Court is empowered to enforce a settlement agreement as long as the court, in its discretion, determines that the settlement agreement is complete. *Murchison v Grand Cypress Hotel Corporation,* 13 F.3d 1483, 1487 (11th Cir. 1994). "[A] district court has jurisdiction to enforce a settlement agreement, at least when one party refuses to abide by the agreement prior to dismissal of the action." *Kent v. Baker,* 815 F.2d 1395, 1400 (11th Cir. 1987); *Vital Pharms., Inc. v. S.A.N. Nutrition Corp.,* 2007 U.S. Dist. LEXIS 41013 *14 (S.D. Fla. 2007).  Courts "favor and encourage settlement agreements in order to conserve judicial resources." *Murchison,* 13 F.3d at 1486.

Courts will enforce settlement agreements when it is possible to do so.  *See Robbie v. City of Miami,* 469 So.2d 1384, 1385 (Fla. 1985); *Pearson v. Ecological Science Corp.,* 522 F.2d 171 (5th Cir. 1975), *cert. denied,* 425 U.S. 912, 96 S. Ct. 1508, 47 L.Ed.2d 762 (1976). In Florida, settlement agreements are favored as an efficient way to settle disputes and as a means to conserve judicial resources. *See Long Term Mgmt. Inc. v. Univ. Nursing Ctr. Inc.,* 704 So.2d 669, 673 (Fla. 1st DCA 1997). State law on interpretation of contracts governs the validity of settlement agreements. *Schwartz v. Fla. Bd. Of Regents,* 807 F.2d 901 (11th Cir. 1987); *Robbie,* 469 So. 2d at 1385.

**B.     The Court Should Enforce the Settlement Agreement Because the Essential Terms are Definite and Certain and Were Agreed to by the Parties.**

To compel enforcement of a settlement agreement, its terms must be sufficiently specific and mutually agreed upon as to every essential element. *See, e.g. Don L. Tull's and Assoc., Inc. v Benge,* 473 So.2d 1384, 1386 (Fla. 1st DCA 1985). The party seeking to enforce a settlement agreement has the burden of establishing "a meeting of the minds or mutual reciprocal assent to a certain and definite proposition." *Long Term Mgmt.,* 704 So. 2d at 673.   Oral settlement

agreements are enforceable under both federal and Florida law. *See, e.g. Skrtich v. Thornton*, 2003 WL 24845555, *2 (M.D. Fla. 2003) (enforcement of verbal settlement agreement where plaintiff refused to sign the written agreement and account of events was supported by affidavits from the attorneys).

Execution of the settlement agreement is not a condition precedent to a settlement agreement, but rather is merely a procedural formality. *See Boyko v. Ilardi*, 613 So.2d 103, 104 (Fla. 3d DCA 1996). Rather, courts look to traditional notions of offer and acceptance, and basic contract law, to determine whether an enforceable contract exists. *See Robbie*, 469 So.2d at 1385. "[T]he making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs -- not on the parties having meant the same thing but on their having said the same thing." *Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Fin. Corp.*, 302 So.2d 404, 407 (Fla. 1974) (quoting *Gendzier v. Bielecki*, 97 So.2d 604, 608 (Fla. 1957)) (emphasis added).

The meeting of the minds in this case and Defendants' acceptance of the settlement agreement as to this cause of action only, as demonstrated in the evidence, is quite clear.   There was no offer accepted which precluded the Plaintiff's ability to file a lawsuit for future claims as the undersigned notified was his intent, notwithstanding the subsequent unilateral definition which was not agreed to as the "future being defined as date of the release forward," as Ms. Brigman alleged in her email communication.   In sum, the parties reached a binding and enforceable agreement fully and finally settling this matter, which should be enforced by the Court and Plaintiff should be permitted to file an additional claim is she so desires.

**C.      Defendant's Attempts to Repudiate the Settlement Agreement are Invalid.**

On October 17, 2011, in an attempt to repudiate the settlement, Ms. Brigman indicated that Defendants did not agree to settlement of the instant action, but had agreed to settle all claims, including those which arose after the filing of the instant law suit.  During settlement negotiations, the undersigned counsel advised Mr. Stevens of the subsequent violation and cause of action, and offered to negotiate the instant matter as well an additional violation of the FDCPA, which arose after the filing of this action.  However, Mr. Stevens asked for separate demands and the undersigned counsel made Defendant's counsel aware that he would resolve the present claim only.  Only on October 17, 2011 did Defendant's later develop a case of "buyer's remorse" as no other written communication between the attorneys prior to that date reflects that there was not in fact a settlement.  Indeed, "[a]n attorney acting for his client within the scope of his authority binds his client." *Tesini v. Zawistowski*, 479 So. 2d 775, 776 (Fla. 4th DCA 1985) citing *Griffith Investment Co.*, 110 So. 2d 271 (Fla. 1926)).  The U.S. Supreme Court has held that:

> [A party who] voluntarily chose [his] attorney as his representation as his representative in the action cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.

*Pioneer Inv. Serv. Co. v. Brunswick Assocs. P'ship,* 507 U.S. 380 (1993) (quoting *Link v. Wabash R. Co.,* 370 U.S. 626, 8 L. Ed. 2d 734, 82 S. Ct. 1386 (1962)).  *See also*, Rules Regulating The Florida Bar 4- 1.4(b) ("A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation"); *Torre v. BFS Retails and Commercial Operations, LLC,* 2008 U.S. Dist. LEXIS 99002 at *10-12 (S.D. Fla 2008) ("In Florida, a party to a contract is not permitted to avoid the consequences of a

contract freely entered into simply because he or she elected not to read and understand its terms" quoting *Murphy v. Courtesy Ford, L.L.C.,* 944 So. 2d 1131, 1134 (Fla. 3d DCA 2006)); *Morales v. Sun Constr., Inc.,* 541 F. 3d 218, 222 (3d Cir. 2008) (the fact that an offeree cannot read, write, speak, or understand the English language is immaterial to whether an English-language agreement the offeree executes is enforceable").

In *Clough Marketing Svcs., Inc. v. Main Line Corp.*, Slip Copy, 2008 WL 2315876 (11th Cir. 2008) United States Court of Appeals, Eleventh Circuit held that an oral settlement agreement was binding upon all parties rather than an "agreement to agree" as suggested by plaintiff.  The Court found plaintiff's argument that because the parties had to negotiate definite amounts to be paid, draft releases, and execute a written settlement unconvincing, ultimately holding that "it will be sufficiently definite and certain if it contains matters which will enable the courts, under proper rules of construction, to ascertain the terms and conditions on which the parties intended to bind themselves."  *Id.* at *2 quoting *Quadron Software Intern. Corp. v. Plotseneder,* 568 S.E.2d 178, 181 (Ga.App. 2002); *See also, Dillard v. Starcon Intern., Inc.*, 483 F.3d 502 (7th Cir. 2007) (holding that employer and employee had meeting of minds on all material terms essential to agreement, such that oral settlement was enforceable notwithstanding subsequent dispute as to additional written terms).

## IV. CONCLUSION.

The essential terms of the parties' settlement agreement are definite and certain and Defendants have assented to all the Settlement Terms.   Accordingly, a valid settlement agreement exists between the parties and the Court should enforce the Settlement Agreement and preserve Plaintiff's right to file an additional FDCPA claim if she so desires.

**WHEREFORE**, Plaintiff, STEPHANIE A. KOCH, respectfully requests entry of an order: (i) holding that this matter is fully and finally resolved between the parties pursuant to Settlement Terms; (ii) directing Defendants to execute a written Settlement Agreement reflecting the terms as agreed upon by the parties, specifically, preserving Plaintiff's right to bring an additional FDCPA claim; (iii) directing Defendant's counsel to execute payment of $9,000.00 dollars within ten (10) days from the entry of this Court's Order; and (iv) award Plaintiff attorney's fees for the necessity of bringing the instant motion.  A proposed Order granting this motion and the relief sought herein is attached hereto.

Respectfully submitted,

SCOTT D. OWENS, ESQ.
*Attorney for Plaintiff*
664 East Hallandale Beach Blvd.
Ft. Lauderdale, FL 33309
Telephone:  954-589-0588
Facsimile:  954-337-0666
scott@scottdowens.com

By: */s/ Scott D. Owens*
Scott D. Owens, Esq.
Florida Bar No. 0597651

### CERTIFICATE OF GOOD FAITH

The undersigned attorney certifies in compliance with S.D. Local Rule 7.1 A (3) that the movant has attempted in good faith to confer with the attorney for Defendants in an effort to secure the information sought herein without the necessity of Court action. Counsel for Defendant stated in email on October 17, 2011 that she opposes the instant motion.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 28, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document

is being served on this 28th day of October on Harold S. Stevens, Esq., Kelley, Kronenberg,

Gilmartin, Fichtel, Wander, Bamdas, Eskalyo, & Dunbrack, P.A., 8201 Peters Road, Suite 4000,

Fort Lauderdale, FL 33324, (via email) HStevens@kelleykronenberg.com.


SCOTT D. OWENS, ESQ.
*Attorney for Plaintiff*
664 East Hallandale Beach Blvd.
Ft. Lauderdale, FL 33309
Telephone:  954-589-0588
Facsimile:  954-337-0666

By: _/s/ Scott D. Owens_
Scott D. Owens, Esq.
Florida Bar No. 0597651